O

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD MONTANEZ,<br><br>    Plaintiff,<br><br>  v.<br><br>PEPSICO, INC,;<br>FRITO-LAY, INC.; and<br>DOES 1-30, inclusive,<br><br>    Defendants. | Case No. 5:24-cv-01792-JWH-DTB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [ECF No. 11]** |

Before the Court is the motion of Defendants PepsiCo, Inc. and Frito-Lay, Inc. (1) to dismiss the Complaint of Plaintiff Richard Montañez under Rule 12(b)(6) of the Federal Rules of Civil Procedure; and (2) to strike Montañez's Complaint pursuant to California's so-called anti-SLAPP law, Cal. Civ. Proc. Code § 425.16.[1] The Court conducted a hearing on the Motion to Strike in October 2024. For the reasons explained below, Defendants' instant Motion to Strike is **GRANTED**, but Montañez is **GRANTED** leave to amend.

## I. BACKGROUND[2]

According to the Complaint, Montañez's life story "is part of the cultural canon."[3] As the son of a Mexican immigrant, Moñtanez "grew up in a poor migrant labor camp in Southern California, sharing a one-bedroom apartment with his parents and ten siblings."[4] After he dropped out of school, Montañez found employment as a janitor at Frito-Lay's plant in Rancho Cucamonga, California.[5]

In the 1980s, Frito-Lay "implemented a Method and Improvement program," through which employees "were encouraged to come up with ideas for new products or improvements to existing products."[6] For each idea that an employee submitted, Frito-Lay would pay that employee $1.[7] Frito-Lay also encouraged employees to "act like owners," which "empowered" Montañez and "motivated" him "to invent new snacks with certain flavor profiles that would better match the taste palates of the Hispanic community, which had not been well-served by the flavor choices previously available to them."[8]

While Montañez was working at Frito-Lay's Rancho Cucamonga plant, one of the machines used to produce Cheetos broke down, which left a batch of Cheetos

---

[1] Defs.' Mot. to Dismiss Pursuant to FRCP 12(b)(6) and Anti-SLAPP Motion to Strike Complaint (the "Motion to Strike") [ECF No. 11]; *see also* Notice of Removal (the "Notice") [ECF No. 1], Ex. 1 at 14-75 (the "Complaint").

[2] The following factual summary is derived from the Complaint. The Court assumes the truth of Montañez's allegations for the purpose of the instant Motion to Strike. *See Parks School Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

[3] Complaint ¶ 2.

[4] *Id.* at ¶ 3.

[5] *Id.* at ¶¶ 4, 33, & 34.

[6] *Id.* at ¶ 37.

[7] *Id.*

[8] *Id.* at ¶¶ 38 & 39.

"undusted."[9] Montañez took the batch home, where he experimented with flavoring the Cheetos with chili powder seasoning.[10] Montañez "drew inspiration from elote—Mexican grilled corn seasoned with chili powder."[11] After he was satisfied with the recipe that he created, Montañez requested a meeting with Frito-Lay's CEO, Roger Enrico.[12] Following that meeting, Frito-Lay "agreed to develop and market" the product, including by implementing Montañez's suggestion to "focus market the product to a Latino consumer base."[13]

In 1992, Frito-Lay launched the product—Flamin' Hot Cheetos.[14] It became a massive success, in part because Defendants were "happy to leverage Mr. Montañez's story to drive the product's sales and popularity."[15] Beginning in 2007, Defendants' former CEOs "expressly and publicly credited Mr. Montañez with the invention, and Defendants have, *inter alia*: (i) had Mr. Montañez give speeches across the country chronicling his invention of Flamin' Hot Cheetos . . ., (ii) paid for his travel and lodging for his speaking tour, (iii) used his story to attract job candidates and inspire new employees, (iv) lauded his accomplishments in letters and notes from senior executives, and (v) promoted him up the ranks to Vice President of Multicultural Marketing & Sales at PepsiCo."[16] Montañez authored two popular memoirs recounting his role in creating Flamin' Hot Cheetos, and he became the subject of a "full-length feature film."[17]

Montañez's fortunes changed dramatically in 2021.[18] For "inexplicable" reasons unknown to Montañez, Defendants made "false and misleading statements to the Los Angeles Times," which led to the publication of an article entitled *The Man Who Didn't Invent Flamin' Hot Cheetos*.[19] According to that article, Frito-Lay told the L.A. Times

---

[9]   *Id.* at ¶¶ 5 & 41.
[10]  *Id.*
[11]  *Id.* at ¶ 41.
[12]  *Id.* at ¶ 6.
[13]  *Id.* at ¶ 8.
[14]  *Id.* at ¶ 54.
[15]  *Id.* at ¶ 11.
[16]  *Id.* at ¶¶ 11 & 66.
[17]  *Id.* at ¶¶ 72–75.
[18]  *Id.* at ¶ 12.
[19]  *Id.*

that "[n]one of [Defendants'] records show that [Montañez] was involved in any capacity in the Flamin' Hot test market" and that "the facts do not support the urban legend."[20]

Five days after the article was published, Frito-Lay "issued a statement clarifying that Mr. Montañez's contributions were 'far from being an urban legend' and that the information Frito-Lay shared with the L.A. Times was 'misconstrued' and 'resulted in confusion.'"[21] But, according to Montañez, Frito-Lay's statement was "too little too late."[22] Before the article was published, Montañez was "pursuing a full-time career as a motivational speaker and consultant," which was "eas[y]" because "Defendants had, for decades, pushed him into press tours focused on his invention of Flamin' Hot Cheetos."[23] After the publication of the article, Montañez's speaking opportunities dried up, and he "lost numerous partnerships, and [saw] a significant decrease in bookings."[24]

As relevant here, Montañez also lost his chance to be featured in a documentary. In May 2023, several years after the L.A. Times article was published, "Oscar-winning production company Lightbox" approached Montañez "about the possibility of producing a documentary about his life."[25] Lightbox informed Montañez that it "wanted the documentary to present both sides of the controversy surrounding the creation of Flamin' Hot Cheetos, with the ultimate conclusion that Mr. Montañez did, in fact invent them."[26] But Lightbox was "forced to abandon the project after Defendants reiterated that they would not participate in any project that aimed at explaining [that] Mr. Montañez did, in fact, invent Flamin' Hot Cheetos."[27]

Montañez filed this action in state court in July 2024.[28] He asserted six claims for relief: (1) violations of the Fair Employment and Housing Act ("FEHA"); (2) fraud; (3) defamation; (4) intentional interference with prospective economic advantage; (5) unjust enrichment; and (6) violations of the Unfair Competition Law (the "UCL").[29]

---

20   *Id.*

21   *Id.* at ¶ 89.

22   *Id.* at ¶ 90.

23   *Id.* at ¶ 14.

24   *Id.*

25   *Id.* at ¶¶ 15 & 103.

26   *Id.* at ¶ 106.

27   *Id.* at ¶ 15.

28   *See id.*

29   *See generally id.*

Defendants removed the action to this Court and filed the instant Motion to Strike the following month.[30] The Motion to Strike is fully briefed.[31]

## II. LEGAL STANDARD

### A. Rule 12(b)(6)—Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002). Although a complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555–56 (citations and footnote omitted). Accordingly, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which means that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint must contain "well-pleaded facts" from which the court can "infer more than the mere possibility of misconduct." *Id.* at 679.

### B. Rule 15(a)—Leave to Amend

A district court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). The purpose underlying the liberal amendment policy is to "facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Therefore, leave to amend should be granted unless the court determines "that the pleading could not possibly be cured by the

---

[30]   *See* Notice; Motion.

[31]   *See* Pl.'s Opposition to the Motion (the "Opposition") [ECF No. 14]; Defs.' Reply in Supp. of the Motion [ECF No. 15].

allegation of other facts." *Id.* (quoting *Doe v. United States*, 8 F.3d 494, 497 (9th Cir. 1995)).

### C. Anti-SLAPP

California's anti-SLAPP law allows a defendant to file a special motion to strike certain claims that arise "from any act of [the defendant] in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b). Although it is not a federal rule or law, the Ninth Circuit has held that "California's anti-SLAPP statute . . . supplements rather than conflicts with the Federal Rules." *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1182 (9th Cir. 2013). Therefore, Cal. Civ. Proc. Code § 425.16(b) is applicable in federal cases premised upon diversity jurisdiction. *See United States* ex rel. *Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999).

Under California law, a court deciding an anti-SLAPP motion to strike must engage in a two-step process. *See Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002). First, "the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Id.* Second, "[i]f the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." *Id.* That two-step process has been adopted by the Ninth Circuit. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010).

The Ninth Circuit has also explained how an anti-SLAPP motion to strike fits within the framework of the Federal Rules of Civil Procedure:

> When an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated. And, on the other hand, when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply.

*Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). "The denial of an anti-SLAPP motion is an immediately appealable final decision pursuant to the collateral order doctrine." *Langer v. Kiser*, 57 F.4th 1085, 1104 (9th Cir. 2023).

## III.  ANALYSIS

### A.   Motion to Strike

The Court begins with Defendants' Motion to Strike.  At the first step of the anti-SLAPP analysis, Defendants must make a *prima facie* showing that Montañez's claims arise out of actions taken "in furtherance" of Defendants' free speech rights.  *Eliot v. Lions Gate Ent. Corp.*, 639 F. Supp. 3d 1012, 1023 (C.D. Cal. 2022).  Activity that is "communicative" satisfies that burden, as does "[s]peech addressing some 'ongoing controversy, dispute or discussion.' "  *Id.* at 1024.

Montañez argues that Defendants have not met their burden because his claims arise out of Defendants' **conduct**—"sabotaging the Lightbox documentary"—not their **speech**.[32]  Montañez likens his claims to the breach-of-contract claim in *Digerati Holdings, LLC v. Young Money Entertainment, LLC*, 194 Cal. App. 4th 873 (2011).  In *Digerati*, an entertainer refused to comply with a contract that required him to be available for formal interviews, which were intended to be used in a documentary about him.  *See id.* at 881.  The *Digerati* court concluded that the entertainer's refusal to sit for interviews did not constitute protected activity because "the alleged failure to appear for interviews" did not "involve[] any written or oral statement" or "any other conduct in furtherance of the exercise of the constitutional right" of free speech.  *Id.* at 885–86.

Montañez overreads *Digerati*.  To start, unlike the circumstances in *Digerati*, Defendants here were not contractually obligated to participate in the Lightbox documentary.[33]  Thus, Defendants' refusal to participate in the documentary was itself "conduct in furtherance of the exercise of the constitutional right" of free speech.  *See id.*; *see also W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (recognizing a First Amendment right to refuse to participate in expressive activities).

Additionally, although the *Digerati* court concluded that the entertainer's refusal to sit for an interview did not implicate any First Amendment rights, that court also concluded that other conduct—specifically, the entertainer's "bad faith conduct" directed "to prevent the sale and distribution of the film"—**was** covered by the anti-SLAPP law.  *Digerati*, 194 Cal. App. 4th at 884.  The difference was that, unlike the entertainer's refusal to sit for interviews, the entertainer's conduct designed to prevent the sale of the film involved "statements made in furtherance" of the entertainer's First Amendment rights.  *Id.* at 888.  Here, Defendants' refusal to participate in the Lightbox documentary involved statements made "in furtherance of" Defendants' free speech

---

[32]   Opposition 29:3.

[33]   *See id.* at 28:18-30:24; *see also* Complaint.

rights, including statements regarding the reasons for Defendants' refusal to participate. Indeed, to the extent that Montañez challenges Defendants' statements to Lightbox on the basis that those statements implied that Montañez was not the creator of Flamin' Hot Cheetos, those statements were plainly "communicative" and related to an "'ongoing controversy, dispute or discussion.'" *Eliot*, 639 F. Supp. 3d at 1024.

Accordingly, the first step of the anti-SLAPP analysis is satisfied.

### B.   Motion to Dismiss

The second step of the anti-SLAPP analysis requires the court to decide whether the plaintiff has demonstrated a probability of prevailing on his or her claims. Where, as here, the anti-SLAPP motion challenges the legal sufficiency of the claims, that inquiry overlaps with the Rule 12(b)(6) analysis. *See Planned Parenthood*, 890 F.3d at 834-35. Accordingly, the Court considers the parties' Rule 12(b)(6) arguments and their step-two anti-SLAPP arguments together.

#### 1.   Racial Discrimination in Violation of FEHA

To make out a claim for racial discrimination in violation of FEHA, Montañez must allege "that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Horne v. Dist. Council 16 Int'l Union of Painters & Allied Trades*, 234 Cal. App. 4th 524, 534 (2015).

Montañez premises his FEHA claim on the termination of his "status as the creator of Flamin' Hot Cheetos," which he characterizes as a "term, condition, or privilege of employment."[34] According to Montañez, that characterization follows from *Harris v. County of Orange*, 902 F.3d 1061, 1072 (9th Cir. 2018), in which the Ninth Circuit concluded that changes to an employee's retirement health benefits could constitute an adverse employment action under FEHA.[35]

The Court is unconvinced. Unlike retirement benefits, Montañez's status as the creator of Flamin' Hot Cheetos was not an express term or benefit of his employment, and Defendants were not contractually obligated to provide Montañez with benefits related to his status as the creator of Flamin' Hot Cheetos. Indeed, Montañez pleads no facts to establish that any employment relationship or contract existed between Montañez

---

[34]   Opposition 13:18–19.

[35]   *Id.* at 13:5–17.

and Defendants after his voluntary retirement from his employment.[36] Montañez's claim for racial discrimination in violation of FEHA is therefore **DISMISSED without prejudice**.

### 2. Fraud

Under California law, the elements of fraud are a "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1060 (2012). "Each element must be alleged with particularity." *Id.*; *see also* Fed. R. Civ. P. 9(b). When a plaintiff alleges that a defendant made a false promise, "the complaint must state *facts* which show how, when, where, to whom, and by what means the representations were tendered." *Beckwith*, 205 Cal. App. 4th at 1060 (emphasis in original; internal quotation marks omitted).

Montañez asserts that he has established each element of his fraud claim because he alleged that Defendants "'promised to continue to support, and to continue to tell the true story'" of his creation of the Flamin' Hot Cheetos,"[37] but Defendants "'intended all along' to 'discredit' [Montañez's] story 'whenever an alternative narrative might be convenient.'"[38] Montañez also maintains that Defendants' actions show that they intended for him to believe that they would always support him despite knowing that, eventually, Defendants would discredit and abandon him.[39]

Those allegations are insufficient to sustain a claim for fraud. Even assuming that Montañez adequately alleged "how, when, where, to whom, and by what means" the fraud occurred, none of the allegations in Montañez's Complaint permits the Court to infer that Defendants knowingly or committed that fraud. *See id.* To the extent that Montañez has alleged that any employees of Defendants made any promises at all, nothing in the Complaint suggests that those employees knew that they would not fulfill those promises. Nor does the Complaint suggest that those employees intended to deceive Montañez. To the contrary, Montañez alleged that Defendants' executives and employees who made the allegedly false promise to support him have in fact supported Montañez—including by making public statements in his defense and by continuing to

---

[36]   *See generally* Complaint.

[37]   Opposition 24:8–10 (quoting Complaint ¶ 128).

[38]   *Id.* at 25:2–3 (quoting Complaint ¶ 129).

[39]   *See id.* at 24:8–25:5.

credit him as the creator of Flamin' Hot Cheetos.[40]  Accordingly, Montañez's fraud claim is **DISMISSED without prejudice**.

### 3. Defamation

"Defamation 'involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage.'" *Balla v. Hall*, 59 Cal. App. 5th 652, 675 (2021) (quoting *Sonoma Media Investments, LLC v. Super. Ct.*, 34 Cal. App. 5th 24, 37 (2019)).  To state a claim for defamation, a plaintiff must plead that the defendant made "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Wong v. Jing*, 189 Cal. App. 4th 1354, 1369 (2010).  Because a statement is not defamatory unless it is false, "courts distinguish between statements of fact and statements of opinion for purposes of defamation liability." *Id.*  Additionally, "[p]ublic figures have the 'burden of proving both that the challenged statement is false, and that [the defendant] acted with 'actual malice.'" *Balla*, 59 Cal. App. 5th at 675 (quoting *Christian Rsch. Inst. v. Alnor*, 148 Cal. App. 4th 71, 84 (2007)) (alterations in original).

#### a. False and Defamatory Statement

Montañez's defamation claim rests entirely on the statements that an unidentified employee of Defendants allegedly made to Lightbox.[41]  According to the Complaint, those statements expressed Defendants' refusal to "participate in the documentary if the documentary did not further discredit Mr. Montañez as the creator of Flamin' Hot Cheetos."  Those statements also implied or expressed Defendants' belief that Montañez did not invent Flamin' Hot Cheetos and that Montañez "lacked integrity and was taking credit for inventing a product that he knew he did not invent."[42]

Because defamation claims implicate the First Amendment, "[t]he words constituting libel or slander must be specifically identified, if not pled verbatim." *Heller v. NBCUniversal, Inc.*, 2016 WL 6573985, at *4 (C.D. Cal. Mar. 30, 2016) (quoting *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1314 (N.D. Cal. 1997)).  "This obligation ensures that a plaintiff would not base the complaint on his own subjective interpretation of the purportedly defamatory statements when an objectively reasonable interpretation would result in dismissal." *Id.*  Moreover, "[t]o determine whether a statement is actionable fact or nonactionable opinion," the court must "examine[]" the

---

[40] *See* Complaint ¶ 95.

[41] *See* Opposition 12:1–5.

[42] Complaint ¶¶ 107, 108, & 136.

"language of the statement" to determine whether the statement could be "understood in a defamatory sense," as well as the "context in which the statement was made." *Wong*, 189 Cal. App. 4th at 1370.

Montañez's allegations regarding Defendants' statements appear to reflect his "own subjective interpretation" of Defendants' statements to Lightbox, not the statements themselves. Montañez primarily contends that, when Lightbox invited Defendants to participate in a documentary, Defendants refused to do so.[43] From that refusal, as well as Defendants' alleged statements to the L.A. Times, Montañez infers that Defendants also made false statements regarding Montañez's role as the creator of Flamin' Hot Cheetos.[44] But the refusal to participate in a project is neither a false statement nor defamatory, and there is no factual basis in the Complaint for the inferences that Montañez wishes to draw, based upon Defendants' refusal.

For example, Montañez assumes that Defendants told Lightbox that Montañez was not the creator of Flamin' Hot Cheetos because Defendants "repeated" the same "false and misleading statements" to Lightbox that Defendants made to the L.A. Times.[45] But as Montañez alleges in the Complaint, Defendants publicly clarified their statements to the L.A. Times, explaining that Defendants "had no reason to doubt the stories Mr. Montañez share[d] about taking the initiative to create new product ideas" and that his "contributions were 'far from being urban legend.'"[46] Similarly, Montañez appears assume that whatever statements Defendants made regarding their refusal to participate in the documentary were necessarily factual assertions, rather than statements expressing Defendants' opinions or beliefs.[47] But the Court cannot conclude that Defendants made defamatory statements unless, after examining the language and context of the statements, the Court finds that the statements could have been "understood in a defamatory sense." *See Wong*, 189 Cal. App. 4th at 1370. Montañez has provided no details upon which the Court could make that conclusion. *See Heller*, 2016 WL 6573985, at *4.

### b. Public Figure Status

With respect to a claim for defamation, a plaintiff can be (1) an all-purpose public figure; (2) a limited-purpose public figure; or (3) a private figure. *See Balla*, 59 Cal. App. 5th at 676. An all-purpose public figure is a person who has "achiev[ed] such

---

[43]   *See id.* at ¶¶ 106, 107, & 129.

[44]   *Id.*

[45]   *Id.* at ¶ 129.

[46]   *Id.* at ¶¶ 89 & 90.

[47]   *See generally id.*

pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." *Reader's Digest Ass'n v. Super. Ct.*, 37 Cal. 3d 244, 253 (1984). A limited-purpose public figure is an individual who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.*

Montañez argues that he is neither an all-purpose public figure nor a limited-purpose public figure because he has neither "attained general fame or notoriety" nor voluntarily "thrust himself into the forefront" of the controversy regarding the creatorship of Flamin' Hot Cheetos.[48] Based upon the allegations in the Complaint, the Court disagrees. Throughout his Complaint, Montañez describes himself as "the embodiment of the American dream," "the subject of two best-selling books and a hit movie," and "part of the cultural canon."[49] Taking those allegations as true, it is difficult, if not impossible, to conclude that Montañez has not "attained general fame."

The same is true with respect to Montañez's arguments that, for the purpose of the defamation analysis, "the inventorship of Flamin' Hot Cheetos" is not a controversy and his status as a creator is not being debated publicly.[50] Throughout his Complaint, Montañez emphasizes the reputational and professional harm that he has suffered because of the public controversy surrounding his status as the creator of Flamin' Hot Cheetos.[51] It is also clear from the Complaint that those harms stem from the loss of a public speaking career that Montañez previously enjoyed and wished to continue to pursue.[52] Taking those allegations as true, the Court must conclude that Montañez is the subject of a public controversy in which he was willingly inserted—and, therefore, that Montañez is at least a limited-purpose public figure.

Because he is at least a limited-purpose public figure, Montañez must plausibly allege that Defendants acted with actual malice. Montañez has not done so. Specifically, although Montañez offers two grounds on which the Court could conclude that Defendants acted with malice, neither is plausible. First, Montañez avers that Defendants were motivated by racial or ethnic bias, but Montañez does not allege any facts to support that inference.[53] Second, Montañez argues that Defendants "acted with

---

[48]    Opposition 21:1 & 21:12.

[49]    *See, e.g.*, Complaint ¶¶ 2 & 3.

[50]    Opposition 21:7–8.

[51]    *See generally* Complaint.

[52]    *See generally id.*

[53]    *See* Opposition 18:21–22.

reckless disregard for [Montañez's] rights" by discrediting his story.[54] But that allegation also lacks factual support, particularly in view of Montañez's concession that Defendants have at various times bolstered Montañez's narrative and have sought to correct their own statements to the extent that those statements implied that Montañez did not play any role in inventing Flamin' Hot Cheetos.[55] Indeed, as Montañez has alleged, it is impossible to discern *any* motive from the Complaint, and Defendants' alleged about-face is "inexplicable."[56] Accordingly, Montañez's claim for defamation is **DISMISSED without prejudice**.

### 4.    Intentional Interference with Prospective Economic Advantage

"To prevail on a cause of action for intentional interference with prospective economic advantage in California, a plaintiff must plead and prove (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's acts." *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1152 n.6 (2004) (citing *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987)). The plaintiff "must also plead and prove that the defendant engaged in an independently wrongful act in disrupting the relationship." *Id.* at 1152. An "independently wrongful act" is one that is "unlawful," meaning that the act is "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003).

Montañez argues that he has "pleaded wrongful conduct in the form of defamation."[57] Because the Court dismisses Montañez's claim for defamation, it also **DISMISSES without prejudice** Montañez's intentional interference claim.

### 5.    Unjust Enrichment

Under California law, "an individual is required to make restitution if he or she is unjustly enriched at the expense of another." *McBride v. Boughton*, 123 Cal. App. 4th 379, 389 (2004) (alterations omitted). "However, 'the fact that one person benefits another is not, by itself, sufficient to require restitution.'" *Id.* (quoting *First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1663 (1992) (alterations omitted)). Instead, the plaintiff

---

54    *See id.* at 18:24.

55    *See* Complaint ¶ 119.

56    *Id.* at ¶ 12.

57    *See* Opposition 22:15.

must demonstrate that "the circumstances are such that, as between the two individuals, it is *unjust*" for the defendant to retain a benefit. *Id.* (emphasis in original).

Montañez's claim for unjust enrichment is premised on his allegation that, "over a period of decades, Defendants reaped tremendous benefits by affirmatively holding [Montañez] out as the inventor of Flamin' Hot Cheetos, only to abruptly change course and begin discrediting [Montañez]."[58] But Montañez and Defendants mutually benefitted from Defendants' decades-long support, so that conduct cannot form the basis of an unjust enrichment claim. And while Montañez has alleged that Defendants' decision to discontinue supporting Montañez has harmed him, he has not identified any benefit—unfair or otherwise—that Defendants have obtained based upon that decision.[59]

Accordingly, Montañez's claim for unjust enrichment is **DISMISSED without prejudice**.

### 6. Unfair Competition Law

The UCL prohibits conduct that is "unlawful, unfair or fraudulent." Cal. Bus. & Prof. Code § 17200. The "unlawful" prong "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable," *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotations omitted), while the "fraudulent" prong proscribes business practices "in which members of the public are likely to be deceived," *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009). To proceed under the "unlawful" or "fraudulent" prong, a plaintiff must allege a predicate violation. *See Cel-Tech*, 20 Cal 4th at 180. The "unfair" prong, by contrast, permits a plaintiff to assert a claim whenever the defendant's conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Id.* at 187.

Montañez has not plausibly alleged a violation of the UCL. Because Montañez has not successfully pleaded any of his predicate claims, Montañez has not pleaded sufficient facts to establish a predicate violation of either the unlawful or fraudulent prongs. Nor has Montañez alleged that Defendants' conduct violated—or threatened to violate—the antitrust laws.[60] Montañez's UCL claim is therefore **DISMISSED without prejudice**.

---

[58]   *Id.* at 26:9–11.

[59]   *See generally* Complaint.

[60]   *See generally id.*; Opposition.

In sum, because Montañez has not demonstrated that he is likely to succeed on any of his claims for relief, Defendants' Motion to Strike is **GRANTED**. However, because Montañez has not previously amended his Complaint, and because he may be able to cure the deficiencies in his pleading by alleging additional facts, the Court **GRANTS** Montañez **leave to amend**. *See Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (noting that "granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with" Rule 15).

### IV. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Defendants' Motion to Strike [ECF No. 11] is **GRANTED**. Montañez's Complaint is **STRICKEN**.

2. Montañez is **DIRECTED** to file an amended pleading, if at all, no later than June 13, 2025. If Montañez chooses to file an amended pleading, then he is also **DIRECTED** to file contemporaneously therewith a Notice of Revisions to Complaint that provides the Court with a redline version that shows the amendments. If Montañez fails to file an amended pleading by June 13, 2025, then the Court will **DISMISS** this action **with prejudice**.

3. If Montañez files an amended pleading in a timely manner, then Defendants are **DIRECTED** to file their respective responses thereto no later than July 3, 2025.

**IT IS SO ORDERED.**

Dated: May 28, 2025

John W. Holcomb
UNITED STATES DISTRICT JUDGE